**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

**CASE NO.: 1:25-cv-8170**

GLOBAL WEATHER PRODUCTIONS,
LLC,
JASON DAVIES,
CARL HOBI,
AARON JAMES JAYJACK,
ADAM LUCIO,
ADRIEN MAUDUIT,
JESSICA MOORE,
MIKE OLBINSKI,
MAXWELL OLSON,
DANIEL JEFFREY ROBINSON,
ROLF ERIK SCHYMA,
DANIEL SHAW,
PAUL SMITH,
CHRISTOPHER JOHN TANGEY,
SEVERE WEATHER AUSTRALIA,
MIKE THEISS and
REED TIMMER,

                Plaintiffs,

v.

FREDERATOR NETWORKS, INC.,

                Defendant.

_____

**COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT**

**(INJUNCTIVE RELIEF DEMANDED)**

    GLOBAL WEATHER PRODUCTIONS, LLC, JASON DAVIES, CARL HOBI,

AARON JAMES JAYJACK, ADAM LUCIO, ADRIEN MAUDUIT, JESSICA MOORE, MIKE

OLBINSKI, MAXWELL OLSON, DANIEL JEFFREY ROBINSON, ROLF ERIK SCHYMA,

DANIEL SHAW, PAUL SMITH, CHRISTOPHER JOHN TANGEY, SEVERE WEATHER

AUSTRALIA, MIKE THEISS and REED TIMMER, ("Plaintiffs") by and through their

undersigned counsel, hereby bring this Complaint against Defendant FREDERATOR

NETWORKS, INC. for damages and injunctive relief, and in support thereof states as follows:

## I.     SUMMARY OF THE ACTION

1.     Plaintiffs bring this action for violations of exclusive rights under the Copyright

Act, 17 U.S.C. § 106, to reproduce, publicly perform, and distribute their original copyrighted

works of authorship and for removal or alteration of copyright management information in

violation of 17 U.S.C. § 1202.

## II.     PLAINTIFFS

2.     Global Weather Productions, LLC ("GWP") is a professional videography

company. GWP manages and stores Clement's collection of copyrighted works, overseeing the

distribution of his creative pieces to various individuals and organizations. This arrangement

allows for centralized control and administration of Clement's intellectual property, streamlining

the licensing and distribution of his works across different media platforms.

3.     GWP's videos of extreme weather events are frequently copied, downloaded, and

reuploaded by infringers. GWP's videos are a popular and frequent source of footage of weather

events that cannot be obtained elsewhere. This makes GWP a frequent target for infringers and

pirates.

4.     GWP is a Wyoming Limited Liability Company. GWP was founded May 31,

2023. Michael Brandon Clement is the sole proprietor/owner of GWP.

   a.     Michael Brandon Clement ("Clement") is an award-winning videographer

   and drone pilot that has licensed content to hundreds of media outlets globally. He has

   been documenting extreme weather for almost 30 years. Clement has been featured on

   Netflix, HBO, and many other documentaries. His company WxChasing has a well-

   established brand and large following on social media. His content has amassed Billions

of views. Clement has assisted with first responders, charities and regularly provides ground truth to the National Weather Service and major media outlets relaying vital information to the public.

        b.    Jonathan Petramala ("Petramala") is a professional storyteller and has a degree in journalism. He has a large social media network following documenting his stories during and after major weather events. Petramala has worked from local to national media spanning more than two decades and has performed water rescues, pulled people trapped from tornado debris and helped people out of a trapped car. His content has been viewed hundreds of millions of times and been licensed to news outlets globally. Petramala was also the writer and director in multiple documentaries and been featured in other documentaries. Petramala has been a professional journalist for over 20 years and shifted his focus to extreme weather and storytelling in 2018. Since then, he has chased a variety of events, including flash floods, tornadoes, and hurricanes. His first tornado chase was in Tescott, Kansas, in May 2018 during a severe weather outbreak, and he intercepted his first major hurricane, Hurricane Florence, later that same year.

5.    Carl Hobi ("Hobi") is an experienced videographer and storm chaser with over a decade of work documenting severe weather events across the central United States. Based in Kansas, he has licensed storm footage to various media outlets. One of his most notable contributions includes footage of a lightning strike that hit a vehicle carrying a married couple and their three children near Waverly, Kansas. Mr. Hobi's work reflects a commitment to both public awareness and the accurate documentation of extreme weather.

6.    Aaron James Jayjack ("Jayjack") is a highly experienced storm chaser and videographer who has traveled across multiple countries in pursuit of extreme weather. He is

also a freelance on camera multimedia journalist for media outlets and has a large social media presence. His content has been seen hundreds of millions of times from hurricanes to tornadoes. Aaron has also assisted with search and rescue and warning coordination with the National Weather Service as well as bringing awareness to life threatening public safety threats.

7.    Adam Lucio ("Lucio") is a professional videographer and severe weather expert with over 20 years of experience in storm chasing and weather documentation. Based in both Dallas, Texas, and Chicago, Illinois, Mr. Lucio has captured footage of more than 350 tornadoes and numerous major hurricanes throughout his career. His work has been featured in major national and international media outlets. He is the co-owner of Illinois Storm Chasers, LLC, the largest social media–based weather platform in the state of Illinois. In addition to his own fieldwork, Mr. Lucio serves as a professional tour guide with Tornadic Expeditions and collaborates with organizations including Texas Storm Chasers and Ryan Hall Enterprises to provide real-time severe weather coverage and content.

8.    Adrien Mauduit ("Mauduit") is a professional photographer, cinematographer, and founder of NIGHT LIGHTS FILMS, based near Tromso in Arctic Norway. Originally from France, Mr. Mauduit holds a Master of Science in Agro-Food and Environmental Studies and has resided permanently in Norway for several years. For over a decade, he has specialized in capturing and interpreting the night sky, particularly the aurora borealis, through photography, film, guided tours, and educational programs. His work has been licensed by major international media outlets, including BBC, Netflix, PBS, HBO Max, and Plimsoll Productions, and he has collaborated with scientific organizations such as NASA's Project PoSSUM. Mr. Mauduit has led more than 500 aurora-focused workshops globally, trained over 500 guides and photographers, and co-developed the innovative aurora-chasing mobile application Norlys

Live—the first of its kind. His content has earned multiple awards in both photography and film, and he maintains a significant social media presence with over 1.5 million followers worldwide.

9.     Jessica Moore ("Moore") is a meteorologist, storm chaser, and professional photographer based in Colorado Springs. She holds a degree in Broadcast and Operational Meteorology from Mississippi State University and has over a decade of experience documenting severe weather, including tornadoes, hailstorms, and blizzards. Her storm footage has been featured on major networks, and she has worked as a field correspondent for WeatherNationTV. Moore operates Stormscapes Photo Tours, offering guided storm chasing and photography experiences. Moore is also involved in weather media projects, including the Weather Women documentary. She hosts the podcast The Girls Who Chase, amplifying the voices of women in storm chasing. Her work has been featured in Cosmopolitan Magazine and continues to contribute to public understanding and appreciation of extreme weather.

10.     Mike Olbinski ("Olbinski") is an award-winning photographer and videographer. His photos and videos have been licensed by Hollywood movies, major brand commercials and just about every media format known globally. He runs photo tours for severe weather and frequently guides major documentary companies like National Geographic to help capture the perfect shot in severe weather.  Professional photographer and Emmy Award winner, Olbinski has chased storms throughout his native Arizona, as well as even further afield, including Texas, Oklahoma, Kansas and Colorado. Whether he's photographing lightning, tornadoes or even cloud formations, his remarkable images are able to convey the awesome power and beauty of nature in its most dramatic and impressive forms.

11.     Maxwell Olson ("Olson") is a storm chaser, videographer and photographer who has captured some of the most recognizable storm images on the planet. He developed a

proprietary storm camera that captured what is widely considered the best storm surge video ever recorded. Olson has assisted directly with disaster victims and in first response after tornadoes. His content has been licensed by many news outlets globally and he has been featured in numerous documentaries including "The Price of Paradise" on Amazon.

12.     Rolf Erik Schyma ("Schyma") "Pecos Hank" is a world-famous photographer, videographer, youtuber, storm chaser, song writer, performer and documentarian. His content has been licensed by nearly every major storm documentary in the last decade. He has assisted with search and rescue, warning coordination as well as scientific studies.

13.     Paul Smith ("Smith") is a professional photographer and storm chaser known for capturing rare and extraordinary atmospheric phenomena, including lightning, thunderstorms, and transient luminous events. His work supports citizen science and has contributed to scientific research in collaboration with NASA and other institutions. Mr. Smith's photography has been featured by The Weather Channel, The Washington Post, My Modern Met, and other major media outlets. In addition to offering fine art prints, NFTs, and guided photo tours, he has led workshops for enthusiasts and provided technical instruction for television production crews. With years of experience in the field and a commitment to documenting the most unusual aspects of nature, especially the night sky, Mr. Smith is an active and respected member of the storm chasing and scientific communities.

14.     Christopher John Tangey ("Tangey") manages Alice Springs Film and Television (ASFTV). Based in the Australian outback, Tangey specialists in film, TV and stills production and services, specializing in drone cinematography Tangey has won 10 gold and 5 silver plaques from the Australian Cinematographers Society (ACS) and has 31 international awards for drone cinematography including wins in LA and from 3 different New York City festivals. He is an

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS

Expert Instructor for Stage32 Los Angeles and licenses much of his Australian stock footage globally. Tangey received two separate Jury commendations for his short films out of 14,000 global entries. He is currently a triple finalist in the 53rd ACS National Awards for Cinematography 2023.

15.    Mike Theiss ("Theiss") is a famous National Geographic explorer and has traveled the world in pursuit of the most extreme weather. He has some of the most famous weather videos ever shot from Hurricane Katrina and many other weather events. He has been capturing storms for three decades and has a licensing history to news outlets, documentaries and television shows globally.

16.    Reed Timmer ("Timmer") is a meteorologist with a PHD and famous storm chaser. Dr. Timmer was featured in "Storm Chasers" television show on Discovery Channel and has worked with local, national and international media for decades. His live streams of weather events have undoubtedly saved many lives by providing outstanding coverage in real time. Dr. Timmer has one of the largest and most valuable extreme weather libraries in the world and has traveled to many countries to document storms. Dr. Timmer also has a very large social media presence with several million followers/subscribers and supporters that help finance his endeavors. Dr. Timmer has a long history of rescuing people from tornado damage to floods to blizzards. Dr. Timmer is also the only person to ever shoot a rocket into a tornado and capture extremely rare data from inside of a tornado. Having intercepted over 1000 tornadoes and a dozen powerful hurricanes since he started chasing 20 years ago, Dr. Timmer is well-known as the most successful and extreme storm chaser in the world, and is one of the few people in existence to document both an F5 tornado, and the most devastating hurricane in U.S. history (Hurricane Katrina).

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS

17.     Daniel Jeffrey Robinson ("Robinson") has been a storm chaser, photographer and cameraman for 32 years. He started photographing lightning in July of 1993 in southwestern Pennsylvania. As of today, his career has involved traveling around the country covering the most extreme weather on the planet including tornadoes, hurricanes, lightning, floods and winter storms.

18.     Daniel Shaw ("Shaw") has been a professional news and weather videographer since 2001. His work has been licensed globally and he manages Severe Weather Australia which supports some 400 professional content creators across Australia with licensing and rights management. Daniel travels vast distances across Australia to capture severe weather events for global media & documentary licensing. Daniel travels to the United States each year for 3 months and documents almost every severe weather event during tornado season. Daniel has also volunteered for over a decade as a medical first responder to assist those in need during times of disasters and is one of the most active trained storm spotters in the world who prioritizes severe weather warning information to ensure the public have the best chance to act when deadly weather strikes.

19.     Severe Weather Australia ("SWA") connects and rights manages content produced by the leading severe weather content creators in every state and territory of Australia. SWA supports around 400 registered professional content creators and connect them with media across Australia and globally.

    a.     Jason Davis ("Davies") is a content creator with a passion for weather.  He captures video and photos with digital photographic equipment as well as aerial / drone equipment. SWA is the exclusive licensing agent for Davies.

20. Plaintiffs' videos are frequently copied, downloaded, and reuploaded by infringers. Plaintiffs are popular and frequent sources of footage that cannot be obtained elsewhere. This makes Plaintiffs frequent targets for infringers and pirates.

21. Plaintiffs operate popular and valuable video streaming platform channels. For example, as of the filing of this Complaint WXchasing had over 180,000 subscribers and over 200 videos on its YouTube channel; the most popular WXchasing video had over 9 million views.

22. Plaintiffs' video streaming channels are viewed by substantial numbers of New York residents who also view advertising placed on the videos on those channels by streaming platforms.

23. When infringement occurs to Plaintiffs' copyrighted Works, Plaintiffs are injured and damaged in New York. When someone infringes on Plaintiffs' copyright like Frederator, Plaintiffs lose out on potential sales or licensing revenue to other New York businesses. When Plaintiffs' copyrighted Works are infringed upon and widely distributed on video streaming platforms without Plaintiffs' permission like Frederator did, it damages Plaintiffs' reputations as professional sources of valuable video content and makes it more difficult for Plaintiffs to negotiate valuable licenses from clients and potential clients in New York in the future.

24. Plaintiffs allege that Frederator copied Plaintiffs' copyrighted Works from the internet in order to advertise, market and promote its business activities. Frederator committed the violations alleged in connection with Frederator's business for purposes of advertising, marketing and promoting its video streaming platform channel(s), grow its video streaming platform channel subscriber base, earn money from advertising to its video streaming platform

channel subscribers, and engage in other money-making business activities using Plaintiffs' copyrighted media content.

### III.    FREDERATOR

25.    Defendant FREDERATOR NETWORKS, INC. ("Frederator") is is a studio based in Burbank, California that focuses on creator-driven cartoons, including "Oh Yeah! Cartoons" for Nickelodeon. Frederator has produced over 250 short films and 19 series in conjunction with partners such as Nickelodeon, Cartoon Network, Netflix, Sony Pictures Animation, Cartoon Hangover, Amazon and Nick Jr. Upon information and belief, Frederator also operates Frederator Digital, which, according to its website "has built the largest global animation network on YouTube, and maintains owned & operated channels to test production concepts and build audience awareness. The various O&O channels target audiences for video game enthusiasts, movie and TV lovers, and all things animation.".

26.    Frederator operates the YOUTUBE CHANNELS named AMERIKANOOFFICIAL, CURIOSOPEDIDA, EL AMERIKANO, FACTSOPEDIA, THE GENIUS LEMON, THE OVERWORLD, THE FANCY BANANA, THE FINEST and THE SCARY CHERRY.

27.    Frederator copied and downloaded Plaintiffs' copyrighted Works from YouTube.

28.    After Frederator downloaded Plaintiffs' Works, it edited the Works, removed Plaintiffs' copyright management information, and then uploaded infringing versions of Plaintiffs' Works to YouTube.

29.    Frederator copied Plaintiffs' Works in order to advertise, market and promote its YouTube channels, grow its YouTube channels subscriber bases, earn money from advertising to its YouTube subscribers, and engage in other money-making business activities using Plaintiffs' copyrighted media content.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS

30.     Frederator committed the violations alleged in connection with Frederator's business for purposes of advertising to the public, including YouTube viewers in New York, in the course and scope of Frederator's business.

31.     The YouTube and Google AdSense terms of service prohibit Frederator from engaging in the actions alleged herein. Specifically, Frederator agreed (1) it is not allowed to upload content that includes third-party intellectual property (such as copyrighted material) unless with permission from that party or are otherwise legally entitled to do so; (2) it is responsible for the content uploaded to YouTube, and may be liable for any copyright infringement claims that arise from your content; (3) YouTube may remove or disable access to any content that it believes infringes on someone else's copyright.

32.     Attached hereto as **Exhibit 1** is a list showing Frederator's links to its channel and the Plaintiffs' Works that are the subject of this action.

33.     Frederator's YouTube channels are extremely popular and valuable.

34.     Frederator's YouTube channels earn significant revenue from the performance and display of pirated video content.

35.     Frederator monetized the videos it stole from Plaintiffs. Monetizing videos on YouTube involves enabling advertisements to be displayed on your videos, which allows you to earn money through the YouTube Partner Program. The process works like this:

        a.   Eligibility: To monetize your videos, you need to meet certain eligibility criteria set by YouTube. You have to have at least 1,000 subscribers on your channel and a total of 4,000 watch hours in the past 12 months.

        b.   Joining the YouTube Partner Program: Once you meet the eligibility requirements, you can apply to join the YouTube Partner Program (YPP).

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS

This program allows you to monetize your videos by enabling ads on them. If your application is approved, you gain access to various monetization features.

c.  Ad Formats: YouTube offers different ad formats that can appear on your videos, including pre-roll ads (shown before your video starts), mid-roll ads (shown during longer videos), and display ads (overlayed on the video or beside it). The specific types of ads displayed on your videos may depend on factors like the viewer's location and the advertiser's targeting preferences.

d.  Revenue Sharing: When ads are displayed on your videos, you earn a portion of the revenue generated by those ads. The exact revenue split varies, but generally, creators receive around 55% of the ad revenue, while YouTube retains the remaining 45%. The revenue is based on factors such as the number of ad impressions, viewer engagement, and the advertisers' bidding.

e.  AdSense Account: To receive payments for your YouTube earnings, you need to have an AdSense account linked to your YouTube channel. AdSense is a program by Google that allows publishers (in this case, YouTube creators) to earn money from ads. Once your AdSense account is set up and linked to your YouTube channel, you can manage your earnings and payment settings.

f.  Payment Threshold: YouTube pays creators once they reach a payment threshold, which is typically $100. Once your earnings exceed this

threshold, you become eligible for payment. YouTube offers various

payment methods, such as direct deposit or wire transfer, depending on

your country.

    g.  Other Revenue Streams: While ad revenue is a significant way to

monetize your YouTube channel, creators often explore other revenue

streams as well. These can include brand partnerships, sponsorships,

merchandise sales, crowdfunding, and more.

36.    Frederator had access to and downloaded Plaintiffs' copyrighted Works hosted by

YouTube from Plaintiffs' affiliated YouTube channels and social media pages.

37.    Once downloaded, Frederator edited the pirated videos to remove or crop out

Plaintiffs' proprietary watermarks and metadata. After editing the pirated videos, Frederator

combined the Plaintiffs' videos with other video content that it either stole from others or created

itself and then reupload the resulting video to its YouTube channels and enabled advertising on

them to earn monetization revenue.

## IV.    JURISDICTION AND VENUE

38.    This is an action arising under the Copyright Act, 17 U.S.C. §§ 501, 1202.

39.    This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C.

§§ 1331, 1338(a).

40.    Jurisdiction is proper in New York because Frederator committed tortious acts

within New York on the video streaming platform operated in New York. Frederator: (a)

committed acts of infringement alleged below in New York on the video streaming platform, and

(b) committed CMI falsification and removal violations alleged below in New York on the video

streaming platform.

41.     Jurisdiction is proper in New York because Frederator caused Plaintiffs to suffer a tortious injury in this state caused by an act or omission outside this state. The acts or omissions that the Frederator committed outside the state consisted of: (a) downloading their copyrighted videos, (b) copying their copyrighted videos, (c) editing and creating derivative works of Plaintiffs' copyrighted videos, and (d) removing and falsifying their copyright management information. All these acts caused Plaintiffs to suffer tortious injury in New York because after committing these acts, Frederator then uploaded the infringing videos to a video streaming platform and displayed/performed the infringing videos on a video streaming platform with false CMI or with CMI removed. Frederator then profited from its acts by receiving advertising revenue from infringing videos, and damaged Plaintiffs by depriving Plaintiffs of the revenue that rightfully belonged to Plaintiffs and not Frederator.

42.     Frederator has sufficient minimum contacts with the state of New York, there is a direct connection between its tortious acts and the state of New York, and the exercise of personal jurisdiction over Frederator complies with the Due Process Clause of the United States Constitution.

43.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) and 17 U.S.C. § 512(g)(3)(D) because the events giving rise to the claims occurred in this district, Frederator engaged in infringement in this district, Frederator is subject to personal jurisdiction in this district, and because Frederator consented to this venue when Frederator provided the counternotification referred to herein because the service provider provided with the counternotification can be found in this judicial district.

44.     Frederator Networks, Inc. is a New York Corporation with its principal place of business located at 190 North Cannon Drive, 4th Floor, Beverly Hills, California, 90210, and can

be served by serving its registered agent, Paracorp Incorporated, One Commerce Plaza, 99 Washington Avenue, #805A, Albany, New York, 12210-2822.

45.    Pursuant to subpoenaed information from YouTube and Google, Frederator Networks, Inc. has an office in New York City, at 22 W21 St, 10th Fl, New York, New York, 10010. *See* **Exhibit 6**.

## V.    YOUTUBE AND GOOGLE LLC

46.    YouTube is a video-sharing platform where users can watch, upload, and share videos. It is one of the most popular websites in the world, with over 2 billion active users.

47.    Google LLC owns YouTube.

48.    YouTube is headquartered in this judicial district.

49.    YouTube's main business is advertising. It generates revenue by selling advertising space on its website and mobile apps. Advertisers can target their ads to specific demographics, interests, and even keywords. This allows them to reach their target audience with a high degree of accuracy. YouTube also earns revenue from its YouTube Premium subscription service. YouTube Premium members can watch videos without ads, download videos for offline viewing, and access YouTube Music Premium. In addition to advertising and subscriptions, YouTube also generates revenue from other sources, such as channel memberships.

50.    YouTube is a very profitable business. In 2021, it generated $28.8 billion in revenue and $20.6 billion in profit. Some of the factors that have contributed to YouTube's success are:

    a.    The large number of users: YouTube has over 2 billion active users worldwide.

    b.    The high level of engagement: Users watch an average of 1 hour and 20 minutes of YouTube videos per day.

c. The wide variety of content: YouTube offers a wide variety of content, from music videos to educational tutorials to funny cat videos.

d. The ease of use: YouTube is easy to use and navigate.

e. The monetization opportunities: YouTube offers a variety of ways for creators to monetize their content, such as through advertising, channel memberships, and Super Chat.

## VI.    INFRINGEMENT BY FREDERATOR

51.    Frederator has never been licensed to use the Works at issue in this action for any purpose.

52.    Frederator copied the Works, publicly performed the Works, and made further copies and distributed the Works on the internet without Plaintiffs' or the authors' permission.

53.    Prior to the filing of this action, on a date after the Works were registered, Plaintiffs discovered the unauthorized use of the Works by Frederator.

## VII.    THE COPYRIGHTED WORKS AT ISSUE

54.    The authors of the Works at issue are listed in **Exhibit 1,** along with the URLs where the Works can be found online.

55.    At all relevant times, Plaintiffs were the exclusive licensees of the Works at issue in this case.

56.    Plaintiffs registered the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). Copies of the Registration Certificates are attached hereto as **Exhibit 3**.

## VIII.  DMCA TAKEDOWN AND DEFENDANT'S FALSE AND MISLEADING COUNTERNOTICE

57.    Plaintiffs notified YouTube and Defendant of the allegations set forth herein in DMCA notices.

58.    Defendant responded to Plaintiffs' DMCA notices with false and misleading counternotices.

59.    The statements in Frederator's counternotices were materially false and Frederator lacked a subjective good faith belief in the false statements contained therein when it made the false statements.

## <u>COUNT I - COPYRIGHT INFRINGEMENT</u>

60.    Plaintiffs incorporate the allegations of paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.    Plaintiffs own valid copyrights in the Works at issue listed on **Exhibit 1.**

62.    The Works at issue in this case were registered with the Register of Copyrights pursuant to 17 U.S.C. § 411(a), as shown in **Exhibit 3**.

63.    Frederator copied, displayed, and distributed the Works at issue in this case and made derivatives of the Works without Plaintiffs' authorization in violation of 17 U.S.C. § 501. Screenshots of the unauthorized uses are attached hereto as **Exhibit 2**.

64.    Frederator profited from the monetization of Plaintiffs' copyrighted content by placing advertising on the Plaintiffs' Works and those profits rightfully belong to Plaintiffs.

65.    Plaintiffs have been damaged.

66.    The harm caused to Plaintiffs is irreparable.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS

## COUNT II - MISREPRESENTATION AND FRAUD UNDER 17 U.S.C. § 512

67.     Plaintiffs incorporate the allegations of paragraphs 1 through 59 of this Complaint as if fully set forth herein.

68.     Plaintiffs notified YouTube and Frederator of the allegations set forth herein in DMCA notices.

69.     Frederator responded to Plaintiffs' DMCA notices with false and misleading counternotices. Attached hereto as **Exhibit 4** are true and correct copies of Plaintiffs' DMCA notices and attached hereto as **Exhibit 5** are Frederator's Counternotices.

70.     Frederator's statements in the counternotices were materially false and Frederator lacked a subjective good faith belief in the false statements contained therein.

71.     Frederator knowingly and materially misrepresented that its copies of Plaintiffs' Works were removed or disabled by mistake or misidentification.

72.     Frederator knowingly and materially misrepresented its true identity in its false and misleading counternotices to shield its true identity from detection.

73.     Plaintiffs were injured by Defendant's misrepresentation and counternotices.

74.     Plaintiffs subpoenaed YouTube and was provided with the channels' account holder's information. This information confirmed that the counternotices were fraudulent. Attached hereto as **Exhibit 6** are true and correct copies of the subpoena responses from YouTube.

75.     Plaintiffs' will be injured by replacing the removed material or ceasing to disable access to it.

76.     Frederator profited from the monetization of Plaintiffs' copyrighted content by placing advertising on Plaintiffs' Works and those profits rightfully belong to Plaintiffs.

77.    Frederator is liable for any damages, including costs and attorneys' fees, incurred by Plaintiffs.

78.    The harm caused to Plaintiffs has been irreparable.

## COUNT III - REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

79.    Plaintiffs incorporate the allegations of paragraphs 1 through 59 of this Complaint as if fully set forth herein.

80.    The Works at issue in this case set forth on **Exhibit 1** contained copyright management information ("CMI") consisting of watermarks identifying the Works as "NOT FOR BROADCAST" and the property of WxChasing, LIVE STORMS MEDIA, or similar markings that Plaintiffs to identify and associate themselves with their Works.

81.    Frederator knowingly and with the intent to enable or facilitate copyright infringement, removed CMI from the Works at issue in this action in violation of 17 U.S.C. § 1202(b).

82.    Frederator committed these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of Plaintiffs' rights in the Works at issue in this action protected under the Copyright Act.

83.    Frederator caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of Plaintiffs' rights in the Works at issue in this action protected under the Copyright Act.

84.    Plaintiffs have been damaged.

85.    The harm caused to Plaintiffs has been irreparable.

**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS

## COUNT IV - FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION

86.    Plaintiffs incorporate the allegations of paragraphs 1 through 59 of this Complaint as if fully set forth herein.

87.    Frederator knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided copyright management information that is false.

88.    By uploading content to YouTube, Frederator declared that it had the necessary rights or permissions to distribute and share that content.

89.    Frederator's YouTube channels provided identifying information for Frederator that was copyright management information that is falsely claimed ownership or rights in the Works displayed there that was false and provided to induce, enable, facilitate or conceal infringement of Plaintiffs' Works in violation of 17 U.S.C. § 1202(a).

90.    In Frederator's counternotices to Plaintiffs' DMCA notices, Frederator knowingly and with the intent to enable or facilitate copyright infringement, falsely provided its own CMI in violation of 17 U.S.C. § 1202(a).

91.    Frederator caused, directed and authorized others to commit these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate or conceal infringement of Plaintiffs' rights in the Works at issue in this action protected under the Copyright Act.

92.    Plaintiffs have been damaged.

93.    The harm caused to Plaintiffs has been irreparable.

WHEREFORE, Plaintiffs pray for judgment against Frederator that:

A.    Frederator, its officers, agents, servants, employees, affiliated entities, and all of those in active concert with it, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. §§ 501, 1203;

B.    Frederator be required to pay Plaintiffs' actual damages and Frederator's profits attributable to the infringement, or, at Plaintiffs' election, statutory damages, as provided in 17 U.S.C. §§ 504, and 1203;

C.    Plaintiffs be awarded their attorneys' fees and costs of suit under the applicable statutes sued upon;

D.    Plaintiffs be awarded pre- and post-judgment interest; and

E.    Plaintiffs be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: October 2, 2025                          Respectfully submitted,

*/s/ Jordan I. Abisror*
JORDAN I. ABISROR
Bar Number: 6139190
jordan.abisror@sriplaw.com

**SRIPLAW, P. A.**
41 Madison Avenue
25th Floor
New York, New York 10010
646.475.9070 – Telephone
561.404.4353 – Facsimile

and

JOEL B. ROTHMAN (JR0352)
NY Bar Number: 2459576
Joel.rothman@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL 33442
561.404.4335 – Telephone
561.404.4353 – Facsimile

21
**SRIPLAW**
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS

*Counsel for Plaintiffs Global Weather Productions, LLC, Jason Davies, Carl Hobi, Aaron James Jayjack, Adam Lucio, Adrien Mauduit, Jessica Moore, Mike Olbinski, Maxwell Olson, Daniel Jeffrey Robinson, Rolf Erik Schyma, Daniel Shaw, Paul Smith, Christopher John Tangey, Severe Weather Australia, Mike Theiss and Reed Timmer*

**SRIPLAW**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS